UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MELVIN DALE ORANGE**                                            **CIVIL ACTION**

**VERSUS**                                                        **NO. 15-246-JJB-RLB**

**CAROLYN COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 14, 2016.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELVIN DALE ORANGE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-246-JJB-RLB** |
| **CAROLYN COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Melvin Dale Orange (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 30, 2012, alleging disability beginning on August 30, 2011, based on: epilepsy, back problems, high blood pressure, migraines, seizures, bulging discs, medication side effects — swollen gums and memory loss, anxiety, and an inability to lift over 10 pounds. (Tr. 74, 128-30).  Plaintiff's application was initially denied by an Administrative Law Judge, who first held an administrative hearing (Tr. 33-72), before issuing an unfavorable decision on November 12, 2013. (Tr. 14-25).  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 25, 2015. (Tr. 1-5).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her

impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff last met the insured status requirements on December 31, 2012.

2. Plaintiff did not engage in substantial gainful activity between his alleged onset of August 30, 2011 and December 31, 2012.

3. Plaintiff suffered from the following severe impairments: petit mal and grand mal seizures; history of degenerative disc disease of the lumbar and thoracic portions of the spine; and migraine headaches (possibly secondary to obstructive hydrocephalus).

4. Plaintiff did not meet or medically equal a listing.

5. Plaintiff retained the residual functional capacity (RFC) to perform light work with some additional constraints. Specifically, he can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; stand/walk for a total of 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to fumes, odors, dusts, gases and

>   poor ventilation in the workplace. He must avoid all exposure to hazards in the workplace such as dangerous moving machinery and unprotected heights.
>
> 6. Through December 31, 2012, Plaintiff remained capable of performing his past relevant work as a security guard (DOT No. 372.667-034, light, SVP-3, semi-skilled).
>
> 7. Plaintiff was not disabled between August 30, 2011 and December 31, 2012.

(Tr. 16-25).

## IV.   DISCUSSION

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

On appeal, Plaintiff raises three assignments of error in support of his overall contention that substantial evidence does not support the ALJ's RFC finding.  First, Plaintiff claims that the ALJ erred by not "mention[ing] the opinion of a treating specialist, [Dr. Thad Broussard,] which tended to contradict [her] decision" that Plaintiff could perform a restricted version of light work. (R. Doc. 10 at 2-4).  Second, Plaintiff suggests that the ALJ's RFC finding is not supported by substantial evidence because it fails to incorporate all of the limitations found by Dr. Randall Lea, whose opinion the ALJ accepted. (R. Doc. 10 at 4-5).  Finally, Plaintiff claims that the RFC

is deficient because the ALJ "provided no specific functional limitations to account for Plaintiff's admittedly severe migraine headaches." (R. Doc. 10 at 5).

### A.     Dr. Thad Broussard's Medical Opinion

On March 9, 2010, Dr. Thad Broussard completed a "Work Slip" and "FMLA Form" for Plaintiff to submit to his employer, Wal-Mart, in connection with his request for leave under the Family Medical Leave Act (FMLA). (Tr. 397, 398, 399).  In its entirety, the Work Slip stated:

This is to certify that Melvin Orange:

\_\_\_\_    (1)    is physically able to return to work on: \_\_\_\_.

  x     (2)    is physically unable to work because of:
             Dx: Low Back Syndrome_____
             Re[check] 3/19/10._____
             _____

(Tr. 398).  In completing the standard check-list FMLA Form, Dr. Broussard found that Plaintiff's "condition commenced" on July 10, 2009 and would last for an "unknown . . . duration." (Tr. 399).  This "condition" rendered Plaintiff "unable to perform his/her job functions" as a shopping cart gatherer. (Tr. 399).  The final section of the FMLA Form asked Dr. Brossard to "[d]escribed other medical facts, if any, related to the condition for which the associate seeks leave." (Tr. 399).  In responds to this request, Dr. Broussard explained: "Pt with difficulty walking [and] standing, as well as sitting for prolonged periods." (Tr. 399).

Dr. Broussard's "opinion" was not mentioned by the ALJ.  According to Plaintiff, "If the ALJ does not accept a medical opinion, then the ALJ is required to explain his reasons for rejecting that probative evidence." (R. Doc. 10 at 2).  As such, "It was facial legal error for the ALJ to fail to mention or analyze this opinion of a treating specialist. Thus, remand is required." (R. Doc. 10 at 3).  The Court does not agree.

First, Plaintiff is incorrect that the ALJ was required to analyze Dr. Broussard's Work Slip opinion that Plaintiff "is physically unable to work because of . . . low back syndrome." (Tr. 398). Opinions on issues reserved to the Commissioner, like the ultimate issue of disability, are not medical opinions, as Plaintiff suggests. *See* 20 CFR § 404.1527(d) (an opinion from a medical source that a claimant is disabled is "not [a] medical opinion[]"); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status."). A statement by a medical source that a claimant is "disabled" or "unable to work" does not require the Commissioner to find that claimant disabled. *See Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) ("A statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act . . . ."). Therefore, the ALJ was not required to discuss Dr. Broussard's opinion as to the ultimate issue of disability — a decision reserved for the Commissioner.

Next, any error resulting from the ALJ's failure to discuss Dr. Broussard's opinion that Plaintiff had "difficulty" walking, standing or sitting for "prolonged periods," was harmless. (Tr. 399). To begin, Dr. Broussard's opinion is conclusory. He offers no indication of the degree of difficulty nor does he temporally define the term "prolonged" or otherwise indicated the duration of Plaintiff's "difficulty." (Tr. 399). Moreover, he does not cite to any objective medical findings made during an examination of Plaintiff to support these limitations. Indeed, Dr. Broussard's minimal treatment records found in the administrative transcript do not contain any objective findings made during physical examination of Plaintiff and Plaintiff has not cited to any such findings. Instead, on June 2, 2009, Dr. Broussard simply diagnosed Plaintiff with

"cerv/lumb spondylosis" before indicating that the condition should be "evaluate[d] and treat[ed]." (Tr. 382). The June 2, 2009 treatment record contains no other information. (Tr. 382). On June 5, 2009, Dr. Broussard referred Plaintiff to physical therapy, stating: "I certify Physical Therapy services are medically necessary for this patient." (Tr. 379). Nothing suggests that Dr. Broussard actually examined Plaintiff on June 5, 2009 and no explanation is given for the referral to physical therapy. (Tr. 376-79). The final treatment record from Dr. Broussard is dated July 2, 2009 and simply states: "Cont. with PT." (Tr. 383). A list of prescriptions was also provided by Dr. Broussard. (Tr. 400). According to the list, Plaintiff was prescribed medications by Dr. Broussard on June 2, 2009, June 16, 2009 and July 21, 2009. (Tr. 400). However, the administrative transcript does not contain any further records indicating treatment by Dr. Broussard. Consistent with the medical evidence, Plaintiff described Dr. Broussard during the hearing as follows:

> Actually, Dr. Broussar[d] was the . . . one that was treating me. He sent me to other people. . . . He's one of those conversation doctors, not hands on. Just, 'How do you feel today? What are you gonna do?'

(Tr. 56). Indeed, has cited to nothing in the record suggesting that Dr. Broussard ever physically examined Plaintiff.

Even assuming Dr. Broussard is an examining or treating physician, any error committed by the ALJ was harmless given the conclusory nature of Dr. Broussard's opinion regarding Plaintiff's ability to stand, sit or walk; and the lack of objective medical findings made by Dr. Broussard in support of this opinion. As such, the Court rejects Plaintiff's first assignment of error.

B.     **Dr. Randall Lea's Medical Opinion**

The ALJ's found Plaintiff capable of sitting for a total of 6 hours in an 8-hour workday and standing/walking for a total of 6 hours in an 8-hour workday. According to Plaintiff, this finding is not supported by substantial evidence because it "omits functional limitations identified in [Dr. Randall Lea's November 20, 2009] medical opinion which the ALJ claims to have accepted." (R. Doc. 10 at 4). Specifically, Plaintiff claims that Dr. Lea found that Plaintiff needed to "alternate between sitting, standing, and walking at regular intervals" (R. Doc. 10 at 4) and that this part of his opinion was ignored by the ALJ and is inconsistent with the RFC. Again, the Court disagrees.

To begin, the ALJ did not wholly accept or indicate that she gave great weight to Dr. Lea's entire medical opinion. Instead, with respect to Dr. Lea, the ALJ simply stated on two separate occasions: "Dr. Lea opined the claimant was capable of performing light work since July 2009." (Tr. 23, 20). Dr. Lea's opinion, along with Dr. Michael Coogan's opinion (Tr. 23, 80-82), was cited as being consistent with the RFC, but the ALJ ultimately gave great weight to the opinions of Dr. Adeboye Francis and Dr. Sandra Durbin. (Tr. 24, 282-83, 294-98). As such, Plaintiff is incorrect that the ALJ gave great weight to Dr. Lea's entire medical opinion and thereby erred in not incorporating all of the limitations found by Dr. Lea in the RFC.

Second, Plaintiff is incorrect that Dr. Lea's opinion included a sit/stand restriction that is inconsistent with the RFC. Specifically, Dr. Lea stated on November 20, 2009 — almost 2 years before Plaintiff's alleged onset of disability — that "at a minimum" (Tr. 395), Plaintiff "should be able to alternate sit, stand, and walk within a relatively confined work/service area every 1-2 hours." (Tr. 396). This part of Dr. Lea's opinion, which the ALJ never claimed to accept, is not

inconsistent with the ability to perform light work, which requires up to 6 hours of standing and walking and 2 hours of sitting.

Because breaks occur at two-hour intervals throughout a normal 8-hour workday, the need to alternate between standing, walking and sitting every two hours would not significantly erode the occupational base for light work. *See Collins v. Commissioner of Social Security*, 960 F. Supp. 2d 487, 500 (S.D.N.Y. 2013) ("To the extent Collins had to alternate positions every two hours . . . [this] limitation[] did not significantly reduce his occupational base to perform light work."); *Braithwaite v. Commissioner of Social Security*, 2011 WL 1253395, at *5 (E.D. Ca. March 31, 2011) (finding the ALJ correctly concluded that "normal breaks essentially provides workers an opportunity to change one's sitting, standing or walking movements every two hours. Thus, Dr. Garfinkel's assessment would not significantly erode the occupational base for light work."); *Keimig v. Colvin*, 2014 WL 970099, at *5 (E.D. Wash. March 12, 2014) ("[A] break every two hours is a standard working condition. As such, a reprieve from sitting or standing every two hours need not have been incorporated into the RFC."); SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983) ("Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."). As such, even assuming the ALJ erred in not specifically mentioning this part of Dr. Lea's opinion in the RFC, any error was harmless.

      **C.**    **Ability to Concentrate**

Finally, Plaintiff claims that the ALJ erred by not including in the RFC "specific functional limitations to account for Plaintiff's admittedly severe migraine headaches." (R. Doc. 10 at 5). According to Plaintiff, the "medical evidence includes MRIs and CT scans of the brain showing evidence of obstructive hydrocephalus" and the "ALJ herself found that Plaintiff's

headaches are indeed severe," but "the ALJ's RFC finding did not in any way account for this admittedly severe condition." (R. Doc. 10 at 5).  Relying solely on medical records showing a diagnosis of obstructive hydrocephalus, Plaintiff argues that the RFC should include specific "rest periods" to account for "concentration problems" that would result from this diagnosis.

However, Plaintiff has not directed the Court to any objective evidence that he actually experiences concentration problems as a result of diagnosed obstructive hydrocephalus.  Instead, he has merely cited to 2013 radiological findings "raising the possibility of some component of obstructive hydrocephalus" (Tr. 327, 330), or images from early 2012 with findings that "may represent chronic compensated obstructive hydrocephalus" (Tr. 230), and studies from late 2011 showing "evidence of partially compensated obstructive hydrocephalus." (Tr. 229).  Even assuming this condition was definitively diagnosed, the diagnosis itself is not sufficient evidence of any resulting limitations. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  In other words, it is the limitations caused by the impairments and not the diagnoses themselves that matter.

The ALJ gave great weight to Dr. Sandra Durbin's medical opinion, in particular, her finding that Plaintiff's impairments did not affect his ability to perform mental work activities. (Tr. 17, 24, 294-98).  Plaintiff has not challenged this finding or otherwise offered support for his contention that his headaches cause restrictions beyond those accounted for by the RFC.  As such, the Court rejects Plaintiff final assignment of error and finds that substantial evidence supports the ALJ's RFC and ultimate finding that Plaintiff was not disabled between August 30, 2011 and December 31, 2012.

## V. RECOMMENDATION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on June 14, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**